# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:09-cv-265-RJC

| | | |
|---|---|---|
| **ROBIN D. McKINLEY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **DAVID MITCHELL, Supt., Mountain-** | ) | |
| **view Correctional Institution,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. No. 1); Respondent's Motion for Summary Judgment (Doc. No. 7); and Petitioner's Response to Respondent's Motion for Summary Judgment (Doc. No. 9).

## I.    HISTORY

### A.  State Court History and Proceedings[1]

On September 11, 2006, North Carolina State Highway Patrol Trooper R.L. Herndon observed Petitioner and his passenger, Shawn Hocking ("Hocking"), on Interstate 40 in Haywood County while Petitioner was driving too closely behind a tractor trailer truck.  (Doc. No. 1-17 at 8).  Trooper Herndon used his blue lights and siren to signal for Petitioner to stop. (Id.).  Once stopped, Trooper Herndon advised Petitioner of his traffic violation and asked to see his driver's license and registration information.  (Id. at 8).  Based upon the men's behaviors and his training and experience, Trooper Herndon suspected that they were being untruthful and

---

[1] Inasmuch as the State Court of Appeals was not required to determine the facts of this case because Petitioner did not take a direct appeal, the trial court's order rejecting Petitioner's Motion for Appropriate Relief does not include a recitation of the facts, and neither party has proffered a factual recitation, this Court has gleaned the facts from the various portions of the State Court record that Petitioner submitted with his § 2254 Petition.

attempting to conceal unlawful activity. (Id. at 10). As a result, Herndon requested consent to search the vehicle and Petitioner agreed to give his written consent. (Id.). While completing the consent form, Petitioner volunteered that he had a marijuana "roach" in the car and offered to retrieve it; however, Trooper Herndon declined his offer. (Id.).

Herndon's search revealed a large zip-lock bag containing soda and a large block of a white powdery substance that field tests determined to be about 538 grams of cocaine. (Id.). The bag was found behind Petitioner's seat. (Id.). Petitioner was arrested along with Hocking and taken before a Haywood County Magistrate who formally charged them with felony drug offenses. (Id.). Specifically, Petitioner was charged with trafficking in cocaine by possession under case number 06CRS053200 and trafficking in cocaine by transportation under case number 06CRS 053201, both in violation of N.C. Gen. Stat. § 90-95(h)(3). (Doc. No. 1-8 at 1-2).

On December 12, 2006, a Haywood County grand jury indicted Petitioner under case number 06CRS53201 for trafficking in 538 grams of cocaine in violation of N.C. Gen. Stat. 90-95(h)(3). (Doc. No. 1-10). The typewritten words read that the Petitioner had trafficked in cocaine in that he "did transport 538 grams of cocaine." (Id.). However, a line was drawn through the words "transport 538 grams of cocaine" and the words "possess 538 grams of cocaine" were written above them along with the initials "JAB." (Id.). On March 1, 2008, the prosecutor sent defense counsel an e-mail offering to accept a guilty plea to "one count of trafficking cocaine, level one (the 35 to 42 month one), and dismiss the remaining level two (70 to 84 month) trafficking." (Doc. No. 1-17). That e-mail further reported the prosecutor's belief that Hocking was willing to testify against Petitioner. (Id.). At some time thereafter but no later than April 28, 2008, defense counsel communicated this offer to Petitioner. (Doc. No. 1-7 at 7).

However, Petitioner rejected the offer and instead asked counsel to file a motion to suppress the evidence against him on the ground that he had merely consented to a visual search of the car. (Id.).

At Petitioner's request, defense counsel secured a forensic expert to analyze the State Bureau of Investigation's report concerning the authenticity of the drugs. (Id). According to the expert, the State's Report was ambiguous in that it showed that a presumptive test had given a positive indication of cocaine but failed to rule out all other possible substances. (Doc. No. 1-16).

On or about April 28, 2008, Petitioner's attorney filed a motion to suppress the evidence. (Id. at 8). On that same date, the Superior Court of Haywood County held a hearing at the conclusion of which it denied the motion. (Id.). Defense counsel then urged Petitioner to accept the State's plea offer to the level one offense but Petitioner again declined and requested a trial. (Id.). Thereafter, the parties selected a jury. (Id.). After jury selection, Petitioner conferred with counsel and his expert witness and eventually decided to plead guilty.[2] (Id.). Petitioner's written plea arrangement provided that:

> Defendant will plead guilty to Trafficking in Cocaine in 06CRS53201. The amount of cocaine will be sentenced at 200 grams or more, but less than 400 grams (Level 2 Trafficking). The charge of trafficking in cocaine in 06CRS53200 will be dismissed. Defendant waives his right to appeal the Motion to Suppress to the North Carolina Court of Appeals."

(Doc. No. 1-11 at 3).

---

[2] Although Petitioner's affidavit for his MAR belatedly asserted that he pled guilty because he was coerced by counsel and the forensic expert and was threatened by counsel and subsequently by the trial court with the possibility of a 30-year sentence if convicted at trial (Doc. No. 1-7 at 8), as is noted hereafter, such assertions are flatly contradicted by his sworn representations to the trial court that no one had threatened him in any way in order to cause him to plead guilty against his wishes. (Doc. No. 1-11 at 2).

3

The trial court then conducted a combined plea and sentencing hearing during which it engaged Petitioner in a plea colloquy to ensure that his guilty plea was the result of an informed choice and was being freely and intelligently made. (Doc. No. 1-11 at 2). Petitioner's answers to the Court's numerous questions established, *inter alia*, that he understood the charges he was facing; he had discussed those matters and possible defenses with counsel; he understood that by pleading guilty, he was relinquishing several significant rights, including his right to appeal the denial of his motion to suppress; that he was tendering his plea under the conditions described in his plea arrangement because he was, in fact, guilty of the subject charge and fully understood what he was doing; that other than his plea arrangement, no one had promised him anything or threatened him in any way in order to cause him to plead guilty against his wishes; that he was entering his plea of his own free will; that he did not have any questions about anything that was said or anything else connected to his case; and that he was satisfied with his attorney's services. (Doc. No. 1-11 at 1-3). After accepting Petitioner's guilty plea, the Court sentenced him to the mandatory minimum presumptive term of 72 to 84 months' imprisonment. (Doc. No. 1-12 at 1).

On December 4, 2008, Petitioner filed a Motion for Appropriate Relief ("MAR") in the Superior Court of Haywood County. (Doc. No. 1-6). The MAR argued that Petitioner had been subjected to several instances of ineffective assistance of counsel; that the trial court erred by denying his motion to suppress the evidence, allowing his case to proceed on an improperly amended indictment, and admitting hearsay evidence in violation of his right to confront his accuser; that his due process rights were violated by the prosecutor's misconduct and vindictiveness; and that his due process rights were violated when the trial court forced him to proceed with an attorney with whom he had a conflict of interest without first conducting an

4

inquiry into his complaints. (Id. at 6-27). On January 16, 2009, the MAR Court entered an Order summarily dismissing Petitioner's MAR with prejudice on the ground that it was "without merit." (Doc. No. 1-5). Thereafter, the State Court of Appeals denied Petitioner's petition for certiorari review, and the State Supreme Court denied his petition for discretionary review on April 8, 2009, thereby concluding his pursuit of State collateral review.

### B.      Federal Habeas Allegations

On July 16, 2009, Petitioner timely filed the instant federal Petition essentially reiterating his MAR claims. (Doc. No. 1). That is, Petitioner alleges that: (1) he was subjected to ineffective assistance of counsel; (2) the court lacked jurisdiction at sentencing because the indictment was defective; (3) he was subjected to an unconstitutional search and seizure, and his due process rights were violated when the trial court denied his motion to suppress; (4) he was subjected to prosecutorial misconduct; and (5) his due process rights were violated at sentencing when he was not permitted to confront the witnesses against him. (Id. at 5-14).

## II.    ANALYSIS

### A.      Summary Judgment Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment a matter of law." Fed. R. Civ. P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, and answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmov-

5

ing party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

**B.    Section 2254 Standard of Review**

In addition to the summary judgment standard set forth above, the Court must consider this Petition under the particular standards governing the review of habeas corpus petitions. The standard of review for habeas claims that were adjudicated on the merits in state court is primarily set forth in 28 U.S.C. § 2254(d). That provision states that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented

6

in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim adjudicated on the merits in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S.Ct. 770, 784 (2011) (internal quotation marks omitted). Furthermore, § 2254(d)(1) and (2) present a "difficult to meet, . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); see also Thaler v. Haynes, 130 S.Ct. 1171, 1173-74 (2010). Critically, "an unreasonable application of federal law is different from an incorrect application of federal law" for § 2254(d)(1) purposes. Williams v. Taylor, 529 U.S. 362, 410 (2000). Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

In Richter, the Court clarified that § 2254(d) does not require a state court to give reasons before its decision can be deemed an adjudication on the merits.[3] 131 S. Ct. at 785. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-85.

**1.      Petitioner has failed to show that the MAR Court's appli-
cation of Strickland was unreasonable.**

---

[3] Petitioner has belatedly asserted that the MAR Court's decision is not an adjudication on the merits because the judge failed to exercise her authority to obtain affidavits, transcripts, a response from Respondent or to conduct a hearing. (Doc. No. 9 at 12-13). However, this claim is baseless because there simply is no requirement under federal law that the MAR Court engage in those activities in order to adjudicate the merits of a claim.

7

Ineffective assistance of counsel claims are governed by the standard articulated in Strickland v. Washington, 466 U.S. 668 (1984). Strickland sets forth a two-pronged test that requires a petitioner to show the court: (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) that such deficient performance prejudiced his defense. Id. at 687-88. Where, as here, a petitioner has entered a plea of guilty, in order to satisfy the prejudice prong, he must show that but for counsel's unprofessional errors, a reasonable defendant would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). The Fourth Circuit has explained that "[t]his is an objective inquiry and dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (citations omitted).

When a court reviews an attorney's performance, "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Pinholster, 131 S.Ct. at 1403 (quoting Strickland, 466 U.S. at 690). This deference is appropriate because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Premo v. Moore, 131 S.Ct. 733, 740 (2011). Thus, hindsight and second guesses are particularly inappropriate where a plea has been entered without a full trial because the "added uncertainty that results when there is no extended, formal record and no actual history to show how the charges would have played out at trial works against the party alleging inadequate assistance." Id. at 745.

Significantly, in the context of addressing a claim of ineffective assistance that has been lodged in a § 2254 petition, the question for the federal court is not whether defense counsel's performance fell below Strickland's standard. Richter, 131 S.Ct. at 785. Rather, "[t]he pivotal

8

question is whether the state court's application of the <u>Strickland</u> standard was unreasonable." <u>Id.</u> Therefore, a federal habeas court's review of a state court's decision concerning a claim of ineffective assistance of counsel must be "doubly deferential" to the state's determination, that is, the federal court must "take a highly deferential look at counsel's performance . . . through the deferential lens of § 2254(d)." <u>Pinholster</u>, 131 S.Ct. at 1403 (internal quotation marks and citations omitted).

### a. Failure to object to the correction of the indictment

Petitioner contends that counsel was ineffective for failing to object when the indictment was "manually correct[ed] without the presence of a Grand Jury." (Doc. No. 1 at 6). However, such an objection would not have changed the outcome of this case. Even if counsel's objection had been sustained, the prosecutor would have obtained a superceding indictment and resumed Petitioner's prosecution. (Doc. No. 7 at 3). Petitioner cannot demonstrate that he was prejudiced by counsel's performance.

First, the typewritten words in the indictment charged that Petitioner had trafficked in cocaine in that he "did transport 538 grams of cocaine." (Doc. No. 1-10 at 1). However, the quoted language had a line through it and the words "possess 538 grams of cocaine" were written above them along with the initials "JAB." (Doc. No. 1-10 at 1). Petitioner does not allege that he saw the indictment being amended. In fact, Petitioner does not allege any facts to show who actually amended the indictment. Further, while the initials "JAB" do not appear to match the name of the grand jury's foreperson (James R. Fore), they also do not match the prosecutor's name (James Moore), the trial Judge's name (the Honorable Mark E. Powell) or the defense attorney's name (Janna D. Allison). Therefore, on this record, Petitioner has failed to establish that the indictment actually was improperly amended "without the presence of the

9

Grand Jury."

Second, the Fifth Amendment provides that "[n]o person shall be held to answer for a[n] . . . infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. However, because this claim is raised in the context of an ineffective assistance of counsel allegation, Petitioner must demonstrate that he was actually prejudiced by counsel's failure to challenge the amendment. The record reflects that the prosecution had a sufficiently compelling case against Petitioner. Petitioner was caught tailgating a tractor trailer with a bag of cocaine on the floor behind his seat.

Moreover, by pleading guilty, Petitioner was able to negotiate a sentence based upon less than the 538 grams of cocaine with which he was caught and, in turn, substantially reduce his sentencing exposure from 175 to 219 months down to 70 to 84 months' imprisonment. See N.C. Gen. Stat. § 90-95(h)(3). Petitioner's guilty plea also allowed him to avoid an additional prosecution for trafficking in cocaine by transportation. Therefore, because this record tends to show that Petitioner had little likelihood of success, he cannot establish that a reasonable defendant in his position would have rejected the plea offer and gone to trial.

Third, under North Carolina law, "[a]ny person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine . . . shall be guilty of a felony, which felony shall be known as 'trafficking in cocaine' . . . ." N.C. Gen. Stat. § 90-95(h)(3)(a). "Trafficking in cocaine by possession and trafficking in cocaine by transportation, in violation of N.C. Gen. Stat. § 90-95(h)(3) [], require the State to prove that the substance was knowingly possessed and transported." North Carolina v. Baldwin, 161 N.C. App. 382, 391 (2003) (citing North Carolina v. Munoz, 141 N.C. App. 675, 684 (2001). The State court has further explained "only a person in the actual or constructive possession of contraband, absent conspiracy or aiding and abetting,

10

could be guilty of the unlawful transportation thereof." North Carolina v. Boyd, 154 N.C. App. 302, 307 (2002) (emphasis in original) (internal quotations marks, citation, brackets and modification omitted). Thus, trafficking in cocaine by possession is a lesser included offense of trafficking in cocaine by transportation. Cf. North Carolina v. McCain, 713 S.E.2d 21, 24-25 (N.C. App. 2011) ("Possession of cocaine is one of the essential elements of trafficking in cocaine, see N.C. Gen. Stat. § 90-95(h)(3). Therefore, it is a lesser included offense of trafficking in cocaine"). The government need not secure an indictment on lesser included charges before allowing the defendant to plead guilty. See North Carolina v. Alston, No. COA10-598, 2011 WL 43300, at *1 (N.C. App. Jan. 4, 2011) (affirming where defendant pled to two unindicted lesser included offenses). It would have been futile for Petitioner's attorney to object to this change.

   **b. Failure to present expert analysis of the cocaine**

   Petitioner alleges that counsel failed to present a complete analysis of the drugs at sentencing and did not submit his expert's report which "exclude[d] the Petitioner of any crime." (Doc. No. 1 at 7).

   To the extent that Petitioner is alleging that counsel was ineffective at sentencing for failing to argue his innocence on the ground that the substances were not cocaine, such allegation is barred by Petitioner's guilty plea. The Supreme Court long ago established that a valid guilty plea constitutes "an admission of all the elements of a formal criminal charge . . . ." McCarthy v. United States, 394 U.S. 459, 466 (1969). By entering a valid plea of guilty "the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime . . . ." United States v. Broce, 488 U.S. 563, 570 (1989). Once a trial court conducts a Rule 11 colloquy and finds the guilty plea to be knowingly and

11

voluntarily tendered, as was done here, absent compelling reasons to the contrary, the validity of the plea and the defendant's corresponding guilt are deemed to be conclusively established. <u>See</u> <u>United States v. Hyde</u>, 520 U.S. 670, 677 (1997) (A guilty plea is not "a mere gesture, a temporary and meaningless formality reversible at the defendant's whim . . . . but a grave and solemn act, which is accepted only with care and discernment." (Internal quotation marks and citations omitted). In other words, the representations of a defendant, his attorney and the prosecutor during a plea hearing as well as the findings of the judge who accepted the guilty plea "constitute a formidable barrier in any subsequent collateral proceedings" and "[s]olemn declarations in open court carry a strong presumption of verity." <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977).

Petitioner swore that he was guilty of the trafficking in cocaine by possession offense and the trial court determined that the plea was made freely, voluntarily and understandingly, and that there was a factual basis to support the plea. (Doc. No. 1-11 at 1-2). The affidavit supporting his MAR belatedly asserted that Petitioner was threatened and coerced into pleading guilty. But that assertion is entirely belied by the statements he made during his plea hearing. Petitioner assured the court that he was not threatened or in any way forced to plead guilty against his wishes. (<u>Id.</u> at 2).

Likewise, to the extent that Petitioner is alleging that counsel should have challenged the quantity of the cocaine, he still is not entitled to any relief. Petitioner's plea arrangement expressly stipulated to involvement with "at least 200 grams or more, but less than 400 grams (Level 2 Trafficking)." (<u>Id.</u> at 3). Petitioner swore to the trial court that such plea arrangement was correct. (<u>Id.</u> at 2). Consequently, it would have been futile for counsel to argue for a sentence based upon a quantity of drugs that was lower than the quantity to which he stipulated.

### c. Failure to investigate the facts underlying the suppression motion and to appeal the denial of that motion

Petitioner claims that counsel was ineffective for failing to investigate the facts underlying his suppression motion and for failing to appeal the denial of that matter. Respondent argues that the MAR Court properly denied these claims because the allegation of inadequate investigation was conclusory and Petitioner's plea agreement waived his right to appeal the suppression issue.

Where an ineffective assistance of counsel claim is based on an allegation that counsel failed to competently litigate a suppression motion, a petitioner must prove that the underlying suppression issue was meritorious as well as meet the demanding Strickland standard. Kimmelman v. Morrison, 477 U.S. 365, 375-82 (1986). Furthermore, as Respondent correctly notes, it is well settled that the presentation of conclusory allegations that are unsupported by specifics do not entitle a habeas petitioner to relief. Allison, 431 U.S. at 74.

Here, Petitioner claims that counsel failed to adequately investigate the circumstances underlying his suppression motion. But Petitioner has failed to articulate how he believes further investigation would have favorably affected his case. In fact, Petitioner has failed to point to a single fact that he believes counsel would have discovered had she conducted a further investigation.

Petitioner also claims that counsel should have appealed the denial of his suppression motion, yet the record clearly establishes that he waived his right to that appeal. (Doc. No. 1-11 at 3).

### d. Failure to file a motion for exculpatory evidence

Petitioner contends that counsel was ineffective for failing to "file a Motion for

13

Exculpatory Evidence where Petitioner had a true and valid reason to go to Florida and the Co-Defendant was in fact caught with the substances on hand without any knowledge from the Petitioner." (Doc. No. 1 at 6).

Petitioner has not identified any exculpatory evidence concerning his trip that the State had in its possession of which he and his attorney were unaware. This allegation is subject to summary dismissal.

### e. Failure to negotiate a better plea arrangement

Petitioner argues that counsel failed to negotiate and retain a plea arrangement for a 35 to 42-month sentence but instead withdrew the plea offer containing that sentence without his knowledge in retaliation for his attempt to fire her. (Doc. No. 1 at 6). Elsewhere in his Petition, Petitioner alleges that it was the prosecutor who vindictively withdrew the lower offer for his refusal to testify against his co-defendant. (Doc. No. 1 at 13).

Apart from the fact that "there is no constitutional right to a plea bargain . . . ," Weatherford v. Bursey, 429 U.S. 545, 561 (1977), the affidavit that Petitioner submitted to the MAR Court contradicts his allegation that defense counsel withdrew the offer without Petitioner's knowledge. The affidavit shows that the lower plea offer was communicated to Petitioner by counsel but Petitioner twice rejected it. (Id. at 7-8). It further reflects that the offer was increased by the prosecutor only after Petitioner forced the State to use its resources to defend against his motion to suppress and to select a jury. (Id.). Petitioner's claim that his higher plea was the result of his attorney's ineffectiveness or retaliation is factually baseless.

### f. Failure to state on the record that there was a conflict of interest

Petitioner claims that his attorney was ineffective for failing to disclose to the Court that she had a conflict of interest with him. (Doc. No. 1 at 7).

14

The Sixth Amendment right to effective assistance of counsel includes a duty of loyalty by counsel that requires the attorney to remain free of conflicts of interest. See Strickland, 466 U.S. at 688. However, the mere "possibility of conflict is insufficient to impugn a criminal conviction." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). Rather, when a defendant claims the existence of a conflict and the trial court fails to inquire about the matter, in order to succeed on his claim of ineffective assistance based upon the conflict, a defendant must show both that his lawyer was subject to a conflict and that such conflict adversely affected counsel's performance. Mickens v. Taylor, 535 U.S. 162, 170-71 (2002).

Petitioner has not identified the basis of the alleged conflict nor provided any factual information in support of this claim. Indeed, Petitioner has not forecast any facts to show how his interests "diverg[ed] [from his attorney's] with respect to a material factual or legal issue or to a course of action." See Sullivan, 446 U.S. at 356 n.3 (concurring in part and dissenting in part).

### g. Failed to present mitigating factors at sentencing

Petitioner's last claim against his former counsel is that she failed to present evidence that he was a Prior Record Level I, a passive participant, had good character, supported his family, and was honorably discharged from the military in order to encourage the court to impose a lower sentence. (Doc. No. 1 at 7). Respondent argues that by virtue of his guilty plea and plea arrangement Petitioner was exposed to a mandatory 70 to 84-month sentence; therefore, he cannot establish either that counsel was deficient or that he was prejudiced by her decision not to present mitigating evidence. (Doc. No. 7 at 14-15).

North Carolina law provides that a person who traffics in 200 grams or more, but less

15

than 400 grams of cocaine shall be sentenced "to a minimum term of 70 months and a maximum term of 84 months in the State's prison . . . ." N.C. Gen. Stat. 90-95(h)(3) (b). Such language establishes a mandatory minimum sentence for Petitioner's offense. <u>See generally</u> <u>North Carolina v. Kamtsiklis</u>, 94 N.C. App. 250, 260 (1989) (referring to sentence for trafficking convictions as mandatory). Under these circumstances, it would have been futile for counsel to present any mitigating evidence because the Court imposed the minimum mandatory presumptive term.

Despite Petitioner's numerous allegations of ineffective assistance, this Court finds that he has failed to show that but for these alleged errors, a reasonable defendant in his situation would have insisted on going to trial. Therefore, the MAR Court's denial of those claims was reasonable under <u>Strickland</u>, and this Court must defer to that Court's decision.

**2.   Petitioner's claim that the sentencing court lacked jurisdiction due to a defective indictment is baseless.**

Petitioner claims that the trial court lacked jurisdiction to sentence him because the indictment was improperly amended to allege that he trafficked in cocaine by possession rather than by transportation. (Doc. No. 1 at 8-9). Respondent contends that the change did not constitute a jurisdictional defect under the law. (Doc. No. 7 at 15-16).

As this Court previously concluded, Petitioner has failed to establish that the indictment was not amended by the grand jury. Additionally, in <u>United States v. Cotton</u>, 535 U.S. 625 (2002), the Supreme Court reiterated that "a ruling that the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment." <u>Id.</u> (internal quotation marks and citation omitted). Thus, Petitioner's contention that the amendment somehow deprived the trial court of jurisdiction is legally baseless.

16

Furthermore, "a grand jury right can be waived." Id. at 626. Petitioner did not object to the amendment of the indictment but entered an intelligent and voluntary guilty plea under it. See id. at 634 ("a constitutional right may be forfeited in criminal . . . cases by the failure to make timely assertion of the right") (internal quotation marks and citation omitted). Thus, it appears that Petitioner forfeited his right to challenge the subject amendment. In this circumstance, Petitioner cannot obtain relief unless he demonstrates plain error, that is, that the alleged error affected his "substantial rights." Id. at 631.

In United States v. Arroyo-Benitez, 237 F. App'x 815 (4th Cir. July 30, 2007) (unpublished), the Fourth Circuit determined, based primarily upon Cotton, that a defendant had forfeited his right to challenge the magistrate judge's amendment of his indictment to allege a quantity of drugs that was consistent with the parties' plea agreement. Id. at 817. Moreover, after applying the plain error test, the Court concluded, like in Cotton, that in light of the overwhelming evidence of the defendant's guilt, the judicial amendment did not "affect the fairness and integrity of the criminal justice system." Id. at 818.

As this Court has noted, the grand jury found the evidence sufficient to charge Petitioner with trafficking in cocaine by transportation and likely would have had no difficulty finding that he also trafficked in cocaine by possession. The State had evidence to support a conviction for both charges. Petitioner is not entitled to any relief because he cannot demonstrate that the erroneous amendment "affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Cotton, 535 U.S. at 631-32. See also Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985) (noting that alleged errors in state court indictments do not warrant federal relief unless they rendered the entire state court proceeding fundamentally unfair). Therefore, the MAR Court's denial of this claim was reasonable and is entitled to deference. 28 U.S.C. §

17

2254(d).

   3.    **Petitioner is barred from challenging the legality of the search and seizure.**

Petitioner alleges that he was subjected to an unconstitutional search and seizure in that he did not consent to the search of his entire car. (Doc. No. 1 at 10). He also alleges that the trial court violated his due process rights when it denied his motion to suppress the evidence which had been obtained by the violation of his Fourth Amendment rights. (Id. at 12). However, these claims must be rejected.

First, the evidence obtained during that search never was introduced against Petitioner because he pled guilty prior to trial. Under these circumstances, the law is clear that "a guilty plea constitutes a waiver of all nonjurisdictional defects. . . ." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). In other words, "a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also Hall v. McKenzie, 575 F.2d 481, 484 (4th Cir. 1978) (finding that a guilty plea entered in state court foreclosed defendant's right to challenge the constitutionality of hearing held before entering that plea).

Second, even if his guilty plea did not bar this challenge, Petitioner is procedurally barred from challenging the propriety of the search. In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held that federal habeas corpus review is not available for Fourth Amendment claims where the state provided a full and fair opportunity to litigate that claim. Id. at 482. In this regard, the record reflects that Petitioner filed a pre-trial motion to suppress for which the

18

trial court conducted a hearing; and that he subsequently raised the claim at all three levels of his collateral proceedings. Thus, notwithstanding his lack of success on this matter, Petitioner was given ample opportunity to raise his Fourth Amendment challenge in the State court. Consequently, he is not entitled to federal habeas review of these two claims.

    **4.    Petitioner's allegations against the prosecutor do not entitle him to any relief**.

Petitioner claims that the prosecutor engaged in misconduct and was vindictive in violation of his right to due process. (Doc. No. 1 at 13). In support of this claim, Petitioner asserts that his co-defendant received a much lower sentence than him; and that the prosecutor increased his plea offer from a 35 to 42-month term up to a 70 to 84-month sentence in retaliation for Petitioner's refusal to testify against his co-defendant. (Id.).

Petitioner does not claim that the prosecutor acted with genuine animus toward him and that the prosecutor would not have pursued him but for that animus. See United States v. Johnson, 325 F.3d 205, 210 (4th Cir. 2003). Such a claim is immune from Tollet's bar to arguing pre-plea constitutional violations. Blackledge v. Perry, 417 U.S. 21, 29 (1974).

Petitioner merely uses the word "vindictive" to complain about the length of his plea offer. (Doc. No. 1 at 13). This claim is subject to Tollet's bar. 411 U.S. at 267. Petitioner is not entitled to second guess his acceptance of his plea deal. Willis, 992 F.2d at 490 ( "[A] guilty plea constitutes a waiver of all nonjurisdictional defects. . ." ).

    **5.  Petitioner's rights under Crawford v. Washington were not violated**.

Petitioner's final claim is that his right to confront the witnesses against him was violated when, despite his request that counsel cross-examine the prosecution's witnesses, the court permitted hearsay testimony during his sentencing hearing; and that such evidence was

19

unsubstantiated.  (Doc. No. 1 at 14).

In <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), the Supreme Court announced that the Confrontation Clause prohibits the admission at trial of testimonial statements that are not subject to cross-examination.  <u>Id.</u> at 50-51.  Notably, however, the <u>Crawford</u> Court did not make its ruling applicable to sentencing proceedings.  Indeed, the Fourth Circuit recently observed that no court has ruled that <u>Crawford</u> made the Confrontation Clause applicable in the sentencing context.  <u>United States v. Jordan</u>, 424 F. App'x 235, 236 (4th Cir. April 21, 2011) (unpublished) (citing <u>United States v. Chau</u>, 426 F.3d 1318, 1323 (11th Cir.  2005); <u>United States v. Roche</u>, 415 F.3d 614, 618 (7th Cir. 2005); <u>United States v. Luciano</u>, 414 F.3d 174, 179 (1st Cir. 2005); <u>United States v. Martinez</u>, 413 F.3d 239, 243-44 (2d Cir. 2005)).

Finally, the Court has reviewed the matters set forth in Petitioner's response to Respondent's Motion for Summary Judgment (Doc. No. 9), and found that they do not further his cause.[4]  In short, Petitioner's response fails to show that the State Court's decision was unreasonable.

## III.    CONCLUSION

Petitioner is barred from raising his challenges to matters that occurred before he entered his guilty plea.  Petitioner also has failed to show that the MAR court unreasonably denied any of his claims.  Therefore, this Court must grant Respondent's Motion for Summary Judgment and deny Petitioner's Petition for relief.

**IT IS, THEREFORE,  ORDERED** that:

---

[4]  Petitioner's affidavit in opposition to the Respondent's Motion for Summary Judgment attempts to raise new factual allegations.  However, this Court is not permitted to consider any new factual assertions that were not presented to the State Court.  <u>Pinholster</u>, 131 S.Ct. at 1398. Accordingly, the Court has not considered those new allegations.

20

1.      Respondent's Motion for Summary Judgment, (Doc. No. 7 ), is **GRANTED**;

2.      Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is

       **DENIED**; and

3.      Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court

       declines to issue a certificate of appealability as Petitioner has not made a

       substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2);

       Miller–El v. Cockrell, 537 U.S. 322, 336–38 (2003) (in order to satisfy § 2253(c),

       a petitioner must demonstrate that reasonable jurists would find the district court's

       assessment of the constitutional claims debatable or wrong).

Signed: October 28, 2011

Robert J. Conrad, Jr.
Chief United States District Judge

21